## ZEIGER, TIGGES & LITTLE LLP

TELEPHONE: (614) 365-9900
FACSIMILE: (614) 365-7900

ATTORNEYS AT LAW

8000 WALTON PARKWAY

SUITE 260

NEW ALBANY, OHIO 43054

WRITER'S DIRECT NUMBER:

(614) 365-4113

LITTLE@LITOHIO.COM

April 16, 2026

**SUBMITTED VIA ECF**

Hon. John G. Koeltl
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, NY 10007-1312

> Re:    <u>Malgorzata Lesniewski, et al. v. Leslie Herbert Wexner, et al.</u>
> United States District Court, Southern District of New York
> Case No. 1:26-cv-02613 (Koeltl, J.)

Dear Judge Koeltl:

Pursuant to Your Honor's Individual Practice Rules, Defendants Leslie Herbert Wexner and The Wexner Foundation respectfully request a premotion conference for leave to file a motion for dismissal. At bottom, Plaintiffs' conclusory allegations are insufficient to demonstrate personal jurisdiction over Defendants, requiring dismissal under Rule 12(b)(2), and fail to plausibly allege violations of the Gender-Motivated Violence Act ("GMVA"), N.Y.C. Admin. Code § 10-1101 *et seq.*, requiring dismissal under Rule 12(b)(6).

Plaintiffs allege that Jeffrey Epstein abused them at a New York property located at 9 East 71st Street (the "Property") between 2000 and 2016. Mr. Wexner, an Ohio resident, acquired the Property through Nine East 71st Street Corporation (the "Corporation") in 1989. Ultimately, Mr. Wexner sold his shares and resigned from his positions as director and president of the Corporation in 1998 – two years before Epstein first made contact with Plaintiffs. The Wexner Foundation, an Ohio non-profit corporation with its principal place of business in Ohio, never had any association with or interest in the Property.[1] Nevertheless, Plaintiffs contend that Defendants are liable for conspiring to commit and "enabling" Epstein's acts of gender-motivated violence against them.

---

[1]    Plaintiffs erroneously contend that The Wexner Foundation is a New York Corporation with its principal place of business in New York, but the Court is not bound to credit jurisdictional allegations contradicted by Defendants' declarations or the records of the Secretary of State. <u>E.g.</u>, <u>MacDermid, Inc. v. Deiter</u>, 702 F.3d 725, 727 (2d Cir. 2012) ("The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits.").

Hon. John G. Koeltl
April 16, 2026
Page 2

To start, group pleading is not permitted. "Instead, the plaintiff is required to establish personal jurisdiction separately over each defendant" and with respect to each claim asserted. In re Aegean Marine Petroleum Network, Inc. Sec. Litig., 529 F. Supp. 3d 111, 135 (S.D.N.Y. 2021). Plaintiffs' habit of grouping all three Defendants together in the Complaint's jurisdictional allegations "is plainly impermissible" to discharge their burden. See Berdeaux v. OneCoin Ltd., 561 F. Supp. 3d 379, 396 (S.D.N.Y. 2021) ("[T]he Court is unable to exercise personal jurisdiction over a particular defendant based on allegations that fail to distinguish among the Scott Group Defendants, leaving the Court no basis to discern who did what.").

General personal jurisdiction is not an option. The Ohio-based Wexner Foundation is "at home" only in Ohio, not in New York. Daimler AG v. Bauman, 571 U.S. 117, 137 (2014). Mr. Wexner, an Ohio citizen, is not at home in New York either. Owens v. Ronemus, 2024 WL 3105605, *5–8 (S.D.N.Y. June 24, 2024). Plaintiffs' allegations that he "owned, used and/or possessed" other New York property having no relationship to their claims does not change matters. See Reich v. Lopez, 858 F.3d 55, 63 (2d Cir. 2017) ("One may have more than one residence in different parts of this country . . . but a person may have only one domicile.").

Specific jurisdiction is also lacking. First, in attempting to exaggerate their purported New York connections, Plaintiffs lump their allegations concerning Defendants' generalized forum contacts – like engaging in unspecified "regular business" in New York, for example – together contacts more closely related to the underlying claims, like their allegations that Mr. Wexner and The Wexner Foundation owned the Property at the time of Plaintiffs' injuries (even though Defendants' declarations show that they didn't). "But these components do not add up." Johnson v. UBS AG, 791 F. App'x 240, 242 (2d Cir. 2019). Rather, they represent the same "sliding scale approach" the Supreme Court rejected in Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty., 582 U.S. 255 (2017). See id. at 264–65 ("For specific jurisdiction, a defendant's general connections with the forum are not enough. . . . What is needed—and what is missing here—is a connection between the forum and the specific claims at issue.").

Second, Plaintiffs appear to allege that Epstein's New York contacts are imputed to Defendants. But the Second Circuit has held that sexual assault by an alleged agent arises wholly from personal motives; it does not benefit and is not attributable to the employer even if "committed within the employment context." Edwardo v. Roman Cath. Bishop of Providence, 66 F.4th 69, 74 (2d Cir. 2023).

Third, Plaintiffs allege that Mr. Wexner used The Wexner Foundation and the Corporation as mere "alter egos" over which he exercised control. But such conclusory allegations devoid of factual support are insufficient to establish jurisdiction over Mr. Wexner under an alter ego theory. E.g., Koh v. Koo, 2023 WL 5352786, *3 (S.D.N.Y. Aug. 21, 2023) ("Koh's repeated assertions that Koo exercised 'complete domination and control' are plainly insufficient on their own."). Plaintiffs "cannot exercise personal jurisdiction over [Mr. Wexner] based solely on his position" with the entity Defendants either. Ontel Prods., Inc. v. Project Strategies Corp., 899 F. Supp. 1144, 1148 (S.D.N.Y. 1995); Waheed v. Sands, 2024 WL 1719363, *3 (S.D.N.Y. Apr. 22, 2024) (Koeltl,

ZEIGER, TIGGES & LITTLE LLP

Hon. John G. Koeltl
April 16, 2026
Page 3

J.).  Especially not since Plaintiffs fail to plausibly allege that he had any personal involvement in their alleged tortious conduct.  See Karabu Corp. v. Gitner, 16 F. Supp.2d 319, 324 (S.D.N.Y. 1998) (to make a prima facie showing of personal jurisdiction, "a plaintiff's allegations must sufficiently detail the defendant's conduct so as to persuade a court that the defendant was a 'primary actor' in the specific matter in question; control cannot be shown based merely upon a defendant's title or position within the corporation, or upon conclusory allegations" of control).

Even if jurisdiction exists, Plaintiffs' claims still fail on the merits on numerous legal grounds.  Plaintiffs contend Defendants are liable under GMVA's so-called abettor provision, a 2022 amendment permitting claims against a party who "directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender."  S.S. v. Rockefeller Univ. Hosp., 239 A.D.3d 424, 426 (N.Y. App. Div. 2025) (characterizing N.Y.C. Admin. Code § 10-1104 as the "Abettor Provision").  Plaintiffs, however, allege that Epstein abused them between 2000 and 2016 – years before the 2022 amendment, which has no retroactive application.  Id.  While a more recent GMVA amendment purports to impose retroactive abettor liability for acts occurring between 2000 and 2022, see N.Y.C. Admin Code § 10-1104.1, its punishment of past conduct is "illegitimate" and unconstitutional.  See Regina Metro. Co., LLC v. New York State Div. of Hous. & Cmty. Renewal, 35 N.Y.3d 332, 384 (2020) (statutory amendments that punish or more severely punish individuals for past conduct is "illegitimate as a justification for retroactivity").

Further, Plaintiffs' apparent belief that Defendants are liable for Epstein's conduct based on their repeated one-sentence assertions that he acted within the scope of his employment is also wrong.  New York courts have consistently refused to hold employers vicariously liable for sexual assault by their employees, even in the context of the GMVA.  Doe v. Sweet Green Inc., et al., Index No. 504820/2024, slip op. at 6 Sup. Ct. Kings Cnty (Mar. 3, 2026) (Montelione, J.).  And Plaintiffs' claims are time barred in any event because the Child Victims and Adult Survivors Acts – which established shorter, already-expired revival periods for victims of sexual offenses to file otherwise untimely claims – preempt the GMVA's provisions "to the extent that they purport to revive the same category of claims."  Parker v. Alexander, 779 F. Supp. 3d 361, 367–68 (S.D.N.Y. 2025); see also Parker v. Alexander, __ F.4th __, 2026 WL 796168, *6 (2d Cir. Mar. 23, 2026) (certifying this question to the New York Court of Appeals).

We appreciate the Court's attention to this matter.

Very truly yours,

*/s/ Marion H. Little, Jr.*

Marion H. Little, Jr.

1082117