**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MALGORZATA LESNIEWSKI, et al.          :
                                       :    Case No. 1:26-cv-02613
                    Plaintiffs,        :
                                       :
         v.                            :    Judge John G. Koeltl
                                       :
LESLIE HERBERT WEXNER, et al.,         :
                                       :
                    Defendants,        :
                                       :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


<u>**MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION TO REMAND**</u>

**TABLE OF CONTENTS**

**PAGE**

TABLE OF AUTHORITIES ................................................................................................ iii

INTRODUCTION .............................................................................................................. 1

LAW AND ARGUMENT ................................................................................................... 3

    A.    Plaintiffs' Motion Must Be Denied Because, As Counsel Conceded To The Court, The Amount-In-Controversy Requirement Is Satisfied ........................ 3

        1.    Your Honor Has Held That A Plaintiff's Failure To Plead A Precise Amount Of Damages Is No Obstacle To Federal Diversity Jurisdiction ................................................................................. 3

        2.    Jurisdiction Is Proper So Long As There Is A Reasonable Probability That *A Single Plaintiff's* Claim Exceeds $75,000 ..................... 4

        3.    Counsel's Express Admission To The Court That Plaintiffs' Claims Exceed $75,000, Together With Other Record Evidence, Establishes More Than A Reasonable Probability That Jurisdiction Is Proper ............................................................................ 5

    B.    Plaintiffs' Motion Must Be Denied Because There Is Complete Diversity Between Plaintiffs And The Non-Fraudulently Joined Defendants ....................................................................................................... 7

        1.    Plaintiffs Have No Possible Claim Against The Corporation Because It Is Dissolved, Its Wind Up Is Complete, And More Than A Reasonable Time Has Passed Since Its Dissolution ........................ 7

            a.    The Corporation Is "Legally Dead," And Was Previously Subject To Suit For Only A Limited Time Under Narrow Circumstances Not Applicable Here ........................ 8

            b.    Defendants Produced Unrebutted Evidence That The Corporation Was, And Has Been, Dissolved Since 2015 And Disposed Of Its Only Alleged Asset – The Property – *Years Before* Dissolving ................................................. 9

**PAGE**

c.  Eleven Years Since The Corporation's Dissolution Is More Than A "Reasonable Period Time" As A Matter Of Law .........................................................................11

2.  Plaintiffs' Fraudulent Transfer Argument Is Nonsense.............................13

3.  Plaintiffs Cannot Pursue Claims Against The Corporation That Did Not Exist At All At The Time Of Its Dissolution, And Arose For The First Time In 2026, Eleven Years After Dissolution ....................15

4.  Plaintiffs Admitted To the Court That their GMVA Claim Against The Corporation Is Based On Vicarious Liability And/Or Respondeat Superior, Despite Well-Settled Case Law Precluding Employer Liability For An Employee's Sexual Assault................................................................................................18

CONCLUSION...............................................................................................................20

CERTIFICATION OF COMPLIANCE.........................................................................21

ii

## TABLE OF AUTHORITIES

**Cases**                                                                                       **Page(s)**

2386 Hempstead, Inc. v. WFG Nat'l Title Ins. Co., 2023 WL 2822553
(S.D.N.Y. Apr. 7, 2023)................................................................................................10

Almeciga v. Ctr. for Investigative Reporting, Inc., 121 F. Supp. 3d 379
(S.D.N.Y. 2015) ...........................................................................................................7

Altman-Gubernikoff v. Garely, 2021 WL 1051624 (S.D.N.Y. Mar. 19, 2021) .............................14

Barbato v. Interstate Fire & Cas. Co., 2025 WL 2959010 (S.D.N.Y. Oct. 17, 2025) .................3, 4

Bartlett v. Honeywell Int'l Inc., 737 F. App'x 543 (2d Cir. 2018)............................................1, 4, 6

Bigsby v. Barclays Cap. Real Est., Inc., 170 F. Supp. 3d 568 (S.D.N.Y. 2016) .........................1, 4

Boatman v. Cnty. of Onondaga, 229 A.D.3d 1214 (N.Y. App. Div. 2024) ...................................18

Brandes Meat Corp. v. Cromer, 146 A.D.2d 666 (N.Y. App. Div. 1989) ...................................11

Brown v. Vitucci, 2022 WL 21781440 (E.D.N.Y. Feb. 16, 2022)................................................11

Cary v. Koener, 200 N.Y. 253 (1910) ......................................................................................16

Castillo v. BJ's Wholesale Club, 645 F. Supp. 3d 85 (E.D.N.Y. 2022) ........................................13

Commissioners of State Ins. Fund v. United States, 72 F. Supp. 549 (S.D.N.Y. 1947).................16

Commonwealth Title Ins. Co. v. 535 W. 162nd St. Equities, Inc.,
5 Misc. 3d 1017(A) (N.Y. Sup. Ct. 2004).................................................................................11

Coniglio v. Cucuzza, 2024 WL 4350744 (E.D.N.Y. Sept. 30, 2024) ............................................8

Doe v. Sweet Green Inc. et al., Index No. 504820/2024, slip op. at 6
(Sup. Ct. Kings Cnty, (Mar. 3, 2026).........................................................................................19

Exxon Mobil Corp. v. Allapattah Servs., Inc., 545 U.S. 546 (2005) ............................................5

Fawn Second Ave. LLC v. First Am. Title Ins. Co., 610 F. Supp. 3d 621
(S.D.N.Y. 2022) ..........................................................................................................10

Felipe v. Target Corp., 572 F. Supp. 2d 455 (S.D.N.Y. 2008) ....................................................1, 6

| **Cases** | **Page(s)** |
|---|---|

Girden v. Sandals Int'l, 262 F.3d 195 (2d Cir. 2001)..................................................19

Greater Bright Light Home Care Servs., Inc. v. Jeffries-El, 151 A.D.3d 818
(N.Y. App. Div. 2017) ...............................................................................................12

Hernandez v. Delta Deli Mkt. Inc., 2019 WL 643735 (E.D.N.Y. Feb. 12, 2019) ..........................10

In Medtech Med. Supply, Inc. v. Country-Wide Ins. Co.,
74 Misc. 3d 137(A) (N.Y. App. Term. 2022) ...............................................................12

In re Duplan Corp., 212 F.3d 144 (2d Cir. 2000)................................................16, 17, 18

Invacare Supply Grp., Inc. v. Englander, 19 Misc. 3d 1114(A) (N.Y. Sup. Ct. 2008).....................8

Juarbe v. Kmart Corp., 2005 WL 1994010 (S.D.N.Y. Aug. 17, 2005) ...........................................7

Lamarche Food Prods. Corp. v. 438 Union, LLC, 178 A.D.3d 910
(N.Y. App. Div. 2019) ...............................................................................................12

Lance Int'l, Inc. v. First Nat'l. City Bank, 86 A.D.3d 479 (N.Y. App. Div. 2011) ................7, 9, 11

Lopez v. Target Corp., 2021 WL 4272292 (W.D.N.Y. Sept. 21, 2021) ...........................................6

Lorisa Cap. Corp. v. Gallo, 119 A.D.2d 99 (N.Y. App. Div. 1986) .................................................8

Major v. Diageo N. Am., Inc., 2022 WL 2003490 (S.D.N.Y. June 6, 2022) ...................................6

Marsh v. Rosenbloom, 499 F.3d 165 (2d Cir. 2007)....................................................................17

Matter of Penn Cent. Transp. Co., 944 F.2d 164 (3d Cir. 1991)...................................................16

McIntyre v. Bradford White Corp., 68 Misc. 3d 1220(A) (N.Y. Sup. Ct. 2020) ....................10, 12

Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291 (2d Cir. 2000) ...........................................4

Michael J. Redenburg, Esq. PC v. Midvale Indem. Co., 515 F. Supp. 3d 95
(S.D.N.Y. 2021) ..........................................................................................................4

MMI Trading, Inc. v. Nathan H. Kelman, Inc., 120 A.D.3d 478
(N.Y. App. Div. 2014) ...............................................................................................15

iv

**Cases**                                                                                                                    **Page(s)**

Moran Enters., Inc. v. Hurst, 66 A.D.3d 972 (N.Y. App. Div. 2009)................................................2

New Generation Wellness Chiropractic, P.C. v. Country-Wide Insurance Company,
170 N.Y.S.3d 467 (App. Term 2022) ........................................................................................12

New York v. Longboat, Inc., 140 F.Supp.2d 174 (N.D.N.Y. 2001) .........................................17, 18

Next Millenium Realty, LLC v. Adchem Corp., 690 F. App'x 710 (2d Cir. 2017) .....................8, 9

Next Millennium Realty, L.L.C. v. Adchem Corp., 2016 WL 1178957
(E.D.N.Y. Mar. 23, 2016) ........................................................................................................9, 17

Nickel v. Nike, Inc., 2011 WL 4343852 (S.D.N.Y. Aug. 18, 2011) ............................................6

Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459 (2d Cir. 1988)................................1, 7, 13, 14, 18

Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.,
2020 WL 7093592 (S.D.N.Y. Dec. 4, 2020) .............................................................................8

Rodgers v. Logan, 121 A.D.2d 250 (N.Y. App. Div. 1986) ...................................................8

Roldan v. Lewis, 2025 WL 676090 (E.D.N.Y. Mar. 3, 2025) .................................................2, 17

Ryan v. Cerullo, 343 F. Supp. 2d 157 (D. Conn. 2004) ...........................................................5

Sikorski v. Wal-Mart Real Est. Bus. Tr., 2023 WL 4347047 (D. Conn. July 5, 2023) ...................7

S.S. v. Rockefeller Univ. Hosp., 239 A.D.3d 424 (N.Y. App. Div. 2025)................................2, 17

Swarna v. Al-Awadi, 622 F.3d 123 (2d Cir. 2010).................................................................3, 18

Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund,
Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v.
Strong Partitions Inc., 2013 WL 6705040 (S.D.N.Y. Dec. 19, 2013)...........................................15

Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, 127 F. Supp. 3d 156
(S.D.N.Y. 2015) .........................................................................................................................10

Yong Qin Luo v. Mikel, 625 F.3d 772 (2d Cir. 2010)...................................................................4

**<u>Other Authorities</u>**                                                         **<u>Page(s)</u>**

28 U.S.C. §§ 1441(a)-(b), 1332(a) ...........................................................................................1

N.Y. Bus. Corp. Law §§ 104(e), 1004(a) ...............................................................................8

N.Y. Bus. Corp. Law § 1005(a)(2) ........................................................................................10

N.Y. Bus. Corp. Law § 1005(a)(1) ..........................................................................................8

N.Y. Bus. Corp. Law § 1006(a) ...............................................................................................8

N.Y. Bus. Corp. Law § 1006(a)(4) ...........................................................................................8

N.Y. Bus. Corp. Law § 1006(b) .........................................................................................15, 18

**INTRODUCTION**

Defendants Leslie Wexner and the Wexner Foundation removed this action to federal court because the amount in controversy exceeds $75,000 and all Plaintiffs are completely diverse from all non-fraudulently joined Defendants.  28 U.S.C. §§ 1441(a)-(b), 1332(a).  Mr. Wexner and the Wexner Foundation are Ohio residents.  Plaintiffs reside in Pennsylvania, Florida, New York and New Jersey.  ***The New York citizenship of Defendant Nine East 71st Street Corporation*** (the "Corporation") – a defunct, dissolved, and fully wound-up business that previously owned the Property where Plaintiffs alleged that Jeffrey Epstein abused them – ***is disregarded under the doctrine of fraudulent joinder***, because Plaintiffs "may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy."  Pampillonia v. RJR Nabisco, Inc., 138 F.3d 459, 460–61 (2d Cir. 1998).

Plaintiffs move to remand the matter disputing both the amount in controversy requirement and diversity based on fraudulent joinder.  But their Motion misstates the caselaw, ignores the evidence, and is contradicted both by Plaintiffs' Counsel's admissions to the Court and the allegations in their own Complaint.  It must be denied.

***First***, Plaintiffs' claims indeed exceed $75,000.  Plaintiffs' strategic decision not to allege a damages estimate is no barrier to the exercise of federal diversity jurisdiction.  Bigsby v. Barclays Cap. Real Est., Inc., 170 F. Supp. 3d 568, 579 (S.D.N.Y. 2016) (**Koeltl, J.**).  Defendants need only show a "reasonable probability" that just one of the eleven Plaintiffs' claims exceeds the statutory threshold.  Bartlett v. Honeywell Int'l Inc., 737 F. App'x 543, 547–48 (2d Cir. 2018).  Because Plaintiffs' Counsel ***admitted to the Court that Plaintiffs seek more than $75,000 in damages on***

1

*their individual claims*, and because Plaintiffs alleged serious, costly, and permanent injures, the reasonable probability standard is more than satisfied.  E.g., Felipe v. Target Corp., 572 F. Supp. 2d 455, 459-60 (S.D.N.Y. 2008) (denying motion to remand where plaintiff alleged severe personal injuries and "effectively conceded" she sought more than $75,000 in damages at court hearing).

*Second*, the parties are completely diverse under the doctrine of fraudulent joinder, because there is no possibility that Plaintiffs can state claims against the Corporation violation of the Gender under the Gender-Motivated Violence Act ("GMVA").  Here, the Corporation dissolved *in 2015*, and disposed of its only alleged asset, the Property, *in 2011*.  Plaintiffs do not allege any ongoing wind up activity and the eleven-year gap between the 2015 dissolution and the filing of the 2026 Complaint exceeds the "reasonable period of time" during which the Corporation could be sued after its dissolution as a matter of law.  Next Millenium Realty, LLC v. Adchem Corp., 690 F. App'x 710, 715–16 (2d Cir. 2017).

Additionally, any liability or claim sued upon must relate to the dissolved entity's wind-up process or exist before the dissolution occurred.  Moran Enters., Inc. v. Hurst, 66 A.D.3d 972, 975–76 (N.Y. App. Div. 2009).  Plaintiffs' claims are neither.  They contend the Corporation "enabled" Jeffrey Epstein's conduct.  But the GMVA *did not* provide for enabler liability until it was amended in 2022, seven years after the Corporation's dissolution.  S.S. v. Rockefeller Univ. Hosp., 239 A.D.3d 424, 426 (N.Y. App. Div. 2025).  And Plaintiffs' claims still did not exist even under the 2022 amendment, which is not retroactive.  Id.  It was not until January 2026, when the GMVA was amended again to include retroactive language that Plaintiffs' claims came into existence.  The mere fact that the alleged underlying abuse occurred years ago does not transform a claim that came into being only months ago into a pre-dissolution claim.  See Roldan v. Lewis, 2025 WL

2

676090, *13 (E.D.N.Y. Mar. 3, 2025) (a plaintiff cannot hold a defendant liable "for conduct not prohibited by the GMVA at the time it took place").

Finally, Plaintiffs have no possible GMVA claims because they cannot hold the Corporation liable under a theory of respondeat superior and/or vicarious liability for Epstein's sexual misconduct, as New York courts have long rejected such claims. See, e.g., Swarna v. Al-Awadi, 622 F.3d 123, 144–45 (2d Cir. 2010). While Plaintiffs now argue that they assert direct claims against the Corporation, ***Plaintiffs' Counsel conceded to the Court at the last teleconference that their claims do allege vicarious liability against the Corporation.*** Indeed, they would not have alleged that Epstein "acted within the scope of his employment" otherwise.

Plaintiffs' fraudulent joinder of the Corporation does not defeat this Court's exercise of subject matter jurisdiction over Plaintiffs' claims.[1] Plaintiffs' Motion should be denied.

## LAW AND ARGUMENT

**A.  Plaintiffs' Motion Must Be Denied Because, As Counsel Conceded To The Court, The Amount-In-Controversy Requirement Is Satisfied.**

**1.  Your Honor Has Held That A Plaintiff's Failure To Plead A Precise Amount Of Damages Is No Obstacle To Federal Diversity Jurisdiction.**

Plaintiffs first argue that Defendants cannot demonstrate the amount in controversy requirement for diversity jurisdiction under 28 U.S.C. § 1332(a) "because the complaint does not allege a damages amount." [Mtn., ECF#30 at 7.] They are wrong.

---

[1]  However, personal jurisdiction over Defendants is lacking, which is a matter to be addressed by way of Defendants' Motion to Dismiss. [See Letter Request for Premotion Conference re Motion to Dismiss, ECF#17.]

Your Honor has previously held that a plaintiff cannot defeat a defendant's statutory right of removal by strategically and purposefully omitting a specific monetary prayer for relief. See Barbato v. Interstate Fire & Cas. Co., 2025 WL 2959010, *4 (S.D.N.Y. Oct. 17, 2025) (denying motion to remand and holding "the complaint and the Notice of Removal show a reasonable probability that the amounts in controversy in Counts IV and V are in excess of $5 million" as required under the Class Action Fairness Act, even though "neither Count in the complaint alleges specific figures for the plaintiffs' damages") (**Koeltl, J.**); Bigsby v. Barclays Cap. Real Est., Inc., 170 F. Supp. 3d 568, 579 (S.D.N.Y. 2016) (failing to "allege a specific damages amount . . .is not fatal" to exercising federal jurisdiction) (**Koeltl, J.**).  Rather, "if the pleadings are inconclusive" because the plaintiff "did not specify [her]damages," "then the courts may look to documents outside the pleadings to other evidence in the record to determine the amount in controversy." Yong Qin Luo v. Mikel, 625 F.3d 772, 775 (2d Cir. 2010); Bigsby, 170 F. Supp.3d at 579.

In short, Plaintiffs' strategic failure to plead a damages figure poses no barrier to this Court finding that the amount in controversy requirement is satisfied.

### 2.    Jurisdiction Is Proper So Long As There Is A Reasonable Probability That *A Single Plaintiff's* Claim Exceeds $75,000.

We add that the bar for demonstrating that the amount in controversy exceeds $75,000 is a low one.  Jurisdiction is proper so long as "it appears to a reasonable probability" that the claim exceeds the statutory threshold by a preponderance of the evidence.  Barbato, 2025 WL 2959010 at *3; see also Mehlenbacher v. Akzo Nobel Salt, Inc., 216 F.3d 291, 296 (2d Cir. 2000) (defendant "has the burden of proving that it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount"); Michael J. Redenburg, Esq. PC v. Midvale Indem. Co., 515 F. Supp. 3d 95, 102 (S.D.N.Y. 2021) ("[A] defendant need not prove the amount in controversy to

4

an absolute certainty.").  And Defendants need only show that <u>one</u> of the Plaintiffs' claims satisfies

this requirement – not that all of them do.  See <u>Bartlett v. Honeywell Int'l Inc.</u>, 737 F. App'x 543,

548 (2d Cir. 2018) ("a defendant must establish a reasonable probability that *one* (not all) of the

plaintiffs' claims exceeds $75,000") (citing <u>Exxon Mobil Corp. v. Allapattah Servs., Inc.</u>, 545 U.S.

546, 566-57 (2005) (where one plaintiff's claim exceeds statutory requirement, the court has

supplemental jurisdiction over other plaintiffs' claims arising from the same case or controversy)).

> **3.    Counsel's Express Admission To The Court That Plaintiffs' Claims Exceed $75,000, Together With Other Record Evidence, Establishes More Than A Reasonable Probability That Jurisdiction Is Proper.**

In a teleconference hearing on April 29, 2026, ***Plaintiffs' Counsel admitted to the Court***

***that Plaintiffs seek more than $75,000 in damages*** on their individual GMVA claims.[2]

Furthermore, each Plaintiff alleges that she has sustained "and will continue to sustain in the

future" costly, severe, permanent and debilitating mental and physical injuries:

> … Plaintiffs have incurred medical expenses and other economic damages, and continue to be in physical pain and suffering, and will now be obligated to expend sums of money for medical care and attention in an effort to cure themselves of their injuries and to alleviate their pain and suffering, emotional distress, mental anguish, embarrassment and humiliation.

> … Plaintiffs were caused to sustain severe and serious personal injuries, a severe shock to their nervous system and certain internal injuries, and were caused to suffer severe physical pain and mental anguish as a result thereof, and upon information and belief these injuries are of a permanent and lasting nature; that said Plaintiffs were incapacitated from attending their regular activities; and there was caused to

---

[2]    That Plaintiffs' Counsel made the concession after removal is of no moment, since it describes the facts existing at the time of removal.  See <u>Ryan v. Cerullo</u>, 343 F. Supp. 2d 157, 159 (D. Conn. 2004) (a plaintiff may "'clarify' his or her complaint after removal in order to assist the court in evaluating the jurisdictional facts existing at the time of removal, if the complaint was ambiguous or silent as to the precise amount in controversy").

be expended sums of money for medical care on their behalf.  [Notice of Removal, Exh. A, Compl., ECF#1-1 at 29-35.]

Nine of the eleven Plaintiffs allege they were abused between 2000 and 2004, meaning that most have already incurred over twenty years' worth of medical expenses.  All of them seek both compensatory and punitive damages.  [Id. at 14-17, 29-35.]  See Major v. Diageo N. Am., Inc., 2022 WL 2003490, *2 (S.D.N.Y. June 6, 2022) ("[T]he reference to the compensatory and punitive damages demand—together with the state court complaint to which it refers—plausibly establish an amount in controversy in excess of $75,000.").  Also, in addition to emphasizing Mr. Wexner's "multibillion-dollar fortune" [id. at 14, 18, 32], Plaintiffs' Counsel warned Defendants in pre-suit correspondence that Mr. Wexner's "exposure here … with punitive damages, is simply enormous, even for him."  [Exh. 1, Pre-Suit Letter.][3]

This is more than sufficient to show a reasonable probability that the amount in controversy for at least one Plaintiff's claim exceeds $75,000.  See Felipe v. Target Corp., 572 F. Supp. 2d 455, 459-60 (S.D.N.Y. 2008) (denying motion to remand where plaintiff alleged severe personal injuries and "effectively conceded" that she sought more than $75,000 in damages at court hearing); Nickel v. Nike, Inc., 2011 WL 4343852, *3 (S.D.N.Y. Aug. 18, 2011) ("The nature and extent of plaintiff's injuries together with his failure to respond to defendants' request for a statement of damages and his failure to agree to execute defendants' stipulation demonstrate a reasonable probability that the

---

[3]  Citing Ninth Circuit precedent, Plaintiffs insist that the Court disregard the letter.  In this Circuit, however, Counsel's representations bind them.  E.g., Lopez v. Target Corp., 2021 WL 4272292, *2 (W.D.N.Y. Sept. 21, 2021) ("Plaintiff cannot have it both ways: she cannot demand $150,000 … for her damages prior to suing in state court, and then suggest that the real amount in controversy is far less when the case is removed to federal court.").

6

jurisdictional threshold will be satisfied."); <u>Bartlett</u>, 737 F. App'x at 548 (reasonable probability standard met where plaintiffs "never stipulated that they would limit their recovery to less than $75,000 per plaintiff" and alleged "personal injury claims, property damage, and loss of enjoyment").[4]

### B. Plaintiffs' Motion Must Be Denied Because There Is Complete Diversity Between Plaintiffs And The Non-Fraudulently Joined Defendants.

Under the doctrine of fraudulent joinder, courts will overlook the presence of a non-diverse defendant who defeats removal where "there is no possibility … that a plaintiff can state a cause of action against that defendant in state court." <u>Almeciga v. Ctr. for Investigative Reporting, Inc.</u>, 121 F. Supp. 3d 379, 382 (S.D.N.Y. 2015) (cleaned up) (quoting <u>Pampillonia v. RJR Nabisco, Inc.</u>, 138 F.3d 459, 460–61 (2d Cir. 1988)).  Plaintiffs here have no possibility of recovering against the Corporation and nothing in their Motion suggests otherwise.

### 1. Plaintiffs Have No Possible Claim Against The Corporation Because It Is Dissolved, Its Wind Up Is Complete, And More Than A Reasonable Time Has Passed Since Its Dissolution.

First, Plaintiffs cannot assert a claim against the Corporation because it has been dissolved for more than a "reasonable period of time." <u>Lance Int'l, Inc. v. First Nat'l. City Bank</u>, 86 A.D.3d 479, 480 (N.Y. App. Div. 2011).

---

[4]   <u>See</u> <u>also</u> <u>Juarbe v. Kmart Corp.</u>, 2005 WL 1994010, *2 (S.D.N.Y. Aug. 17, 2005) (motion to remand denied where plaintiff alleged "severe and serious personal injuries … great physical pain and mental anguish" that were "permanent in nature and duration" and refused to limit recovery to $75,000); <u>Sikorski v. Wal-Mart Real Est. Bus. Tr.</u>, 2023 WL 4347047, *2 (D. Conn. July 5, 2023) (motion to remand denied in view of "the significant injuries alleged by Plaintiff, and Plaintiff's own concession that damages may at some point exceed $75,000").

        **a.**        **The Corporation Is "Legally Dead," And Was Previously Subject To Suit For Only A Limited Time Under Narrow <u>Circumstances Not Applicable Here.</u>**

A corporation is dissolved when the New York Department of State accepts and files a certificate of dissolution. <u>Coniglio v. Cucuzza</u>, 2024 WL 4350744, \*1 (E.D.N.Y. Sept. 30, 2024) (citing N.Y. Bus. Corp. Law ("BCL") §§ 104(e), 1004(a)). New York regards dissolved corporations as "legally dead." <u>Invacare Supply Grp., Inc. v. Englander</u>, 19 Misc. 3d 1114(A) (N.Y. Sup. Ct. 2008). "Upon dissolution, a corporation's legal existence terminates," subject only to limited exceptions. <u>Lorisa Cap. Corp. v. Gallo</u>, 119 A.D.2d 99, 109 (N.Y. App. Div. 1986).

Specifically, the dissolved corporation "may continue to function for the purpose of winding up" its affairs, <u>see</u> BCL § 1006(a), and "shall carry on no business except for the purpose of winding up its affairs." BCL § 1005(a)(1). Aggrieved parties may seek "any remedy available to or against [the dissolved] corporation, its directors, officers or shareholders" provided that the alleged liability existed or was incurred "before such dissolution." BCL § 1006(b). Likewise, a dissolved corporation can commence a suit against another party, but only "for the limited purpose of 'winding up its affairs.'" <u>Coniglio</u>, 2024 WL 4350744 at \*1; BCL § 1006(a)(4); <u>see also</u> <u>Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.</u>, 2020 WL 7093592, \*6 (S.D.N.Y. Dec. 4, 2020) (finding that dissolved corporation "which no longer exists . . . cannot move this Court for relief, as that would constitute an action other than 'winding up its affairs'"). "Thus, the dissolved corporation exists for 'the purpose of and for as long as is necessary to satisfy and provide for its debts and obligations and it may sue or be sued on these obligations until its affairs are fully adjusted.'" <u>Next Millenium Realty, LLC v. Adchem Corp.</u>, 690 F. App'x 710, 715–16 (2d Cir. 2017) (quoting <u>Rodgers v. Logan</u>, 121 A.D.2d 250, 253 (N.Y. App. Div. 1986)).

8

But because "the winding up of affairs cannot continue indefinitely," New York courts have held that the wind-up period is limited to a "reasonable period of time."  Lance Int'l, 86 A.D.3d at 480; Next Millenium Realty, 690 F. App'x at 716.  Actions brought by or against a dissolved corporation after the "reasonable" winding up period fail as a matter of law.  Lance Int'l, 86 A.D.3d at 480; see also Next Millennium Realty, L.L.C. v. Adchem Corp., 2016 WL 1178957, *6 (E.D.N.Y. Mar. 23, 2016), aff'd, 690 F. App'x 710 (2d Cir. 2017) ("[A] corporation lacks the capacity to be sued upon completion of the winding up process under New York law.").

> **b.** **Defendants Produced Unrebutted Evidence That The Corporation Was, And Has Been, Dissolved Since 2015 And Disposed Of Its Only Alleged Asset – The Property – *Years Before* Dissolving.**

In this case, an entity name search on the Division of Corporations' website confirms that Nine East 71st Street Corporation was dissolved in 2015.  Plaintiffs filed their 2026 Complaint more than a decade later.  Based on the case law detailed infra, moreover, the Corporation's wind up is presumed complete because this eleven-year gap is more than a "reasonable period of time." Next Millenium Realty, 690 F. App'x at 716.

Plaintiffs insist Defendants cannot show that the Corporation's wind-up period has ended by relying on "conclusory statements," as opposed to evidence.  [Mtn. ECF#30 at 9.]  Except Defendants *have* produced evidence.  Exhibit L to the Notice of Removal is the Corporation's filing history with the New York Department of State's Division of Corporations showing that it was dissolved by certificate filed May 14, 2015, roughly eleven (11) years before Plaintiffs filed their March 2, 2026 Complaint.  [Notice of Removal, Exh. L, ECF#1-12 at 1-2.]  That's evidence. Exhibit M to the Notice of Removal, deed records showing that the Corporation transferred the Property to another Epstein-owned entity in 2011, thereby disposing its only alleged asset years

9

before dissolving [see ECF#1-13], is also evidence showing that the Corporation effectively wound up well before 2026.  See BCL § 1005(a)(2) (the "wind up" process includes collecting and selling assets).  And the Court can properly take judicial notice these public filings under Federal Rule of Evidence 201, particularly since "documents outside of pleadings can be considered to determine if the pleadings can state a cause of action" in the fraudulent joinder context.  2386 Hempstead, Inc. v. WFG Nat'l Title Ins. Co., 2023 WL 2822553, *7 n.6 (S.D.N.Y. Apr. 7, 2023).[5]

Plaintiffs, by contrast, have offered no evidence or allegations suggesting that the Corporation is still winding up its affairs more than a decade after its dissolution.  To the contrary, they submitted even more property records showing the Corporation sold off the Property in 2011, four years before it dissolved.  [Ex. 1 to Mtn., ECF#31-1.]  Since "[t]here is nothing in the record to show that [the Corporation] had not fully adjusted its affairs by" 2026, the Court must conclude it has completely "wound up."  See Next Millenium Realty, 690 F. App'x at 716 (affirming that defendant was fully "wound up" where "Lincoln ceased operations in 1972 or 1973, and dissolved in approximately 1977. There is nothing in the record to show that Lincoln—which has not conducted business since 1977—had not fully adjusted its affairs by 1997, when plaintiffs purchased the property, or by 2003, when this suit was filed"); see also McIntyre v. Bradford White Corp., 68 Misc. 3d 1220(A) (N.Y. Sup. Ct. 2020) (plaintiffs cannot maintain suit against defendant dissolved in 2001 where "[t]here is simply no evidence that more than fifteen years later, when

---

[5]      See Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Pursuant to Rule 201, courts have considered … documents filed with a Secretary of State" including dissolution certificates); Hernandez v. Delta Deli Mkt. Inc., 2019 WL 643735, *3 n.3 (E.D.N.Y. Feb. 12, 2019); Fawn Second Ave. LLC v. First Am. Title Ins. Co., 610 F. Supp. 3d 621, 628 (S.D.N.Y. 2022) (judicial notice of property records).

10

plaintiffs brought suit against it, the corporation was still in the process of winding up of its affairs"); <u>Lance Int'l</u>, 86 A.D.3d at 480 (relying on evidence that plaintiff "was dissolved by the Secretary of State in 1975").

          **c.**        **Eleven Years Since The Corporation's Dissolution Is More Than A "Reasonable Period Time" As A Matter Of Law.**

Defendants cited cases in the Notice of Removal holding that eleven years between dissolution and the filing of a post-dissolution claim is more than a reasonable period of time. <u>See</u> <u>Brown v. Vitucci</u>, 2022 WL 21781440, *5 (E.D.N.Y. Feb. 16, 2022), <u>R&R adopted in relevant part, rejected in part on other grounds</u>, <u>see</u> No. 14-cv-05034 (Apr. 21, 2022 text order), <u>aff'd</u>, 2023 WL 2961730 (2d Cir. Apr. 17, 2023) (plaintiff corporation dissolved in 2004 that executed at-issue lease in 2008 lacked the capacity to file suit on it "approximately ten years" later in 2014); <u>see also</u> <u>Brandes Meat Corp. v. Cromer</u>, 146 A.D.2d 666, 666–67 (N.Y. App. Div. 1989) ("The plaintiff's sale to the defendant of certain goods in 1984 and 1985 was clearly not a transaction relating to the winding up of the corporation's affairs" after defendant's 1981 dissolution, "and the corporation therefore lacks the capacity to sue or to be sued in connection with that transaction").

Plaintiffs counter that <u>Brown</u> and <u>Brades</u> are summary judgment decisions – but that only proves the point. Given its procedural posture, <u>Brown</u> holds that a plaintiff cannot bring a post-dissolution claim against a corporation "approximately ten years" after it dissolved ***as a matter of law***, and <u>Brandes</u> holds that such a claim fails as a matter of law even if based on conduct occurring only three or four years after dissolution. This Court should reach the same conclusion.[6]

---

[6]      Plaintiffs do not distinguish or address Defendants' other cases. <u>See</u> <u>Commonwealth Title Ins. Co. v. 535 W. 162nd St. Equities, Inc.</u>, 5 Misc. 3d 1017(A) (N.Y. Sup. Ct. 2004) (corporation dissolved in 1994 could not be held

11

Plaintiffs' cases do not advance their position either.  For example, they cite <u>Greater Bright Light Home Care Servs., Inc. v. Jeffries-El</u>, 151 A.D.3d 818 (N.Y. App. Div. 2017), as holding that a "dissolved entity could assert claims eleven years after dissolution."  [Mtn., ECF#30 at 10.]  But that description is misleading at best.  <u>Greater Bright Light</u> involved cross-claims asserted by a bank in May 2000, arising from transfers occurring in 1999, but the bank was not dissolved until June 2002, ***two years after filing*** its cross-claims.  <u>Id.</u> at 820–21.  Because the bank could still sue on its "contingent" pre-dissolution claims "until its affairs are fully adjusted," the court held that the bank was "permitted to pursue its cross claims … in the course of winding up its affairs," including by moving for summary judgment in 2013, eleven years after dissolution.  <u>Id.</u> at 821.  ***<u>It did not hold that the bank could file its previously non-existent claims for the first time eleven years after dissolution</u>***, as Plaintiffs attempt to here.[7]

Lamarche Food Prods. Corp. v. 438 Union, LLC, 178 A.D.3d 910 (N.Y. App. Div. 2019), is also inapposite but for different reasons.  Although the plaintiff there dissolved in 1992, its wind

---

liable under 1998 agreement in action filed in 2003; individual shareholder of dissolved corporation was personally liable); <u>McIntyre</u>, 68 Misc. 3d 1220(A) (fifteen years since dissolution is beyond a reasonable period of time).

[7]      Plaintiffs' other cases also involve claims filed prior to dissolution.  <u>See</u> <u>In Medtech Med. Supply, Inc. v. Country-Wide Ins. Co.</u>, 74 Misc. 3d 137(A) (N.Y. App. Term. 2022) (plaintiff filed suit in 2000, was dissolved in 2001, and entered a settlement with defendant in 2003; plaintiff's request for entry of judgment against defendant on agreement in 2017 was part of "winding up" pre-dissolution claim); <u>New Generation Wellness Chiropractic, P.C. v. Country-Wide Insurance Company</u>, 170 N.Y.S.3d 467 (App. Term 2022) (plaintiff sued in 2002 and dissolved in July 2009, but entered settlement agreement with defendant in August 2009; defendant, raising the issue for the first time on reply, failed to show plaintiff had fully wound up when it sought judgment on agreement in 2017).

up was ongoing because it still retained a major asset – the property sold pursuant to the parties'

contract – well into 2016.  Indeed, the parties "put[ ] certain language into the deed transferring

title indicating that the transfer was being done to wind up Lamarche Food's business."  Id. at 911.

So the "defendant d[id] not dispute that Lamarche Food could continue to function for the purpose

of selling the subject property as part of its winding up of the corporation's affairs."  Id. at 912.

Plaintiffs also claim that Castillo v. BJ's Wholesale Club, 645 F. Supp. 3d 85 (E.D.N.Y.

2022) is "instructive" on dissolution.  But it isn't.  Castillo does not even use the word

"dissolution."  Rather, that court rejected fraudulent joinder because the defendants argued that the

New York-based defendant did not control the premises where the plaintiff was injured, even

though plaintiff alleged contrary facts.  Id. at 93–95.  Here, however, fraudulent joinder does not

turn on any "factual question" id. at 93, because no one disputes that the Corporation owned the

Property and no one disputes the facts regarding dissolution.  To reiterate:  Plaintiffs do not allege

any facts supporting their speculative claim that the Corporation is still winding up its affairs in

2026.  Nor do they allege the Corporation even had other assets to liquidate apart from the Property.

Ultimately, the Corporation disposed of its only asset well before it dissolved in 2015, and

the Complaint's allegations do not permit a finding of continued wind up eleven years after

dissolution.  There is simply "no possibility," in other words, that Plaintiffs can state a cause of

action against the Corporation in state court.  Pampillonia, 138 F.3d at 462.

### 2.  Plaintiffs' Fraudulent Transfer Argument Is Baseless.

Next, Plaintiffs contend that courts have "declined to permit companies 'winding up' to

evade liability by fraudulently transferring assets."  [Mtn., ECF#30 at 11.]  Even if this proposition

were correct, though, it is not clear why it matters.  Plaintiffs do not allege fraudulent transfer.  Not by the Corporation or by any Defendant.

In fact, in attempting to retrofit this never-alleged claim into existence, Plaintiffs appear to have omitted the dates of transfer and dissolution as if to imply that one happened in conjunction with the other.  But they didn't.  As Exhibit 1 to Plaintiffs' Motion confirms, the Corporation transferred the Property to Maple, Inc., in 2011.  [Ex. 1 to Mtn., ECF#31-1 (property records of transfer).]  How can it possibly be that the Corporation's 2015 dissolution "was a sham to evade liability" on a claim that did not even exist until the GMVA was amended in 2026?  Especially when, by that time, there was not even any Property left to transfer?

Of course, any imagined claim for fraudulent transfer based on the 2011 conveyance would be time barred in any event.[8]  Thus, regardless of how the Court reads this argument, there is "no possibility" that Plaintiffs can state their never-pled, untimely claim for fraudulent transfer against the Corporation.  Pampillonia, 138 F.3d at 462; see also Altman-Gubernikoff v. Garely, 2021 WL 1051624, *7 (S.D.N.Y. Mar. 19, 2021) (non-diverse defendants were fraudulently joined where plaintiffs' medical malpractice claims against them were "time-barred").

---

[8]    Plaintiffs invoke N.Y. Debt. & Cred. Law ("DCL") § 273(a) & (b).  Under those provisions, they had to assert their fraudulent transfer claims within four years of the 2011 transfer at the absolute latest, and they do not argue the GVMA revives such claims.  See DCL § 278 (claims under § 273(a) must be brought "not later than four years after the transfer was made or the obligation was incurred or, if later, not later than one year after the transfer or obligation was or could reasonably have been discovered" and claims under § 273(b) "not later than one year after the transfer was made").

14

**3.    Plaintiffs Cannot Pursue Claims Against The Corporation That Did Not Exist At The Time Of Its Dissolution, And Arose For The First Time In 2026, Eleven Years After Dissolution.**

Where, as here, Plaintiffs' claims are unrelated to the Corporation's wind up, "[t]he Business Corporation Law requires that the claim was to have existed before dissolution" in order to be pursued after dissolution. MMI Trading, Inc. v. Nathan H. Kelman, Inc., 120 A.D.3d 478, 480 (N.Y. App. Div. 2014); see also BCL § 1006(b) (dissolution shall not affect "any right or claim existing or any liability incurred before such dissolution"). Accordingly, "[c]ourts in this district and New York state courts have held that a dissolved corporation can sue and be sued for obligations arising prior to their dissolution, but lack capacity to sue and be sued for obligations arising after dissolution that do not relate to the winding up of the corporation." Trs. of New York City Dist. Council of Carpenters Pension Fund, Welfare Fund, Annuity Fund, & Apprenticeship, Journeyman Retraining, Educ. & Indus. Fund v. Strong Partitions Inc., 2013 WL 6705040, *2 (S.D.N.Y. Dec. 19, 2013).

Plaintiffs cannot state GMVA claims against the Corporation because their GMVA claims were not "existing" or "incurred before" the Corporation's 2015 dissolution. BCL § 1006(b). Plaintiffs argue their claims arose before dissolution because most of them allege they were abused before 2015.[9] But courts considering claims asserted under a newly-enacted statute based on pre-enactment events have reached the opposite conclusion.

---

[9]    There is one exception; Plaintiff Viktoriia Makhova, who alleges she was abused in 2016. [Compl., ECF#1-1 at 16.] Even by Plaintiffs' reasoning then, her GMVA claim was not "existing" or "incurred" before the Corporation dissolved as BCL § 1006(b) requires.

15

"Where the right to maintain an action is conferred upon an individual or class of persons by statute[,] it is impossible that the cause of action shall be deemed to have accrued in favor of such individual or class at any period prior to the date when the statute took effect." Commissioners of State Ins. Fund v. United States, 72 F. Supp. 549, 554 (S.D.N.Y. 1947) (quoting Cary v. Koener, 200 N.Y. 253, 259 (1910)) (holding that although the incident sued upon occurred in July 1945, the cause of action did not accrue until the Federal Tort Claims Act went into effect in August 1946).  Courts examining pre-enactment claims arising under the 1980 Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), which is similar to the 2026 GMVA amendment insofar as it "imposed retroactive liability" on property owners, have applied the same reasoning.  Matter of Penn Cent. Transp. Co., 944 F.2d 164, 166 (3d Cir. 1991).[10]

In Matter of Penn Central, the Third Circuit held that a final bankruptcy decree issued in 1978 did not discharge CERCLA claims against the reorganized entity arising from the prepetition release of hazardous wastes occurring well before CERCLA's enactment in 1980, because it was not until 1980 at the earliest that any CERCLA claim even existed.  See id. at 168 (because "it was not until the passage of CERCLA" that petitioners could file suit against the reorganized entity, petitioners' CERCLA claims were not prepetition contingent claims discharged in bankruptcy). The Second Circuit has agreed: "CERCLA claims arise for purposes of bankruptcy at the earliest on the date that CERCLA became effective, December 11, 1980."  In re Duplan Corp., 212 F.3d 144, 151 (2d Cir. 2000).  "Claims under CERCLA 'simply did not exist' before CERCLA's

---

[10]    Defendants acknowledge for purposes of this filing that N.Y.C. Admin. Code § 10-1104.1 purports to allow GMVA claims based on conduct occurring before January 9, 2022, but will explain in their Motion to Dismiss that imposing retroactive liability is unconstitutional.   [See Letter Request for Premotion Conference, ECF#17 at 2.]

16

enactment" in 1980, and thus could not be discharged in a bankruptcy action where the petition was filed before 1980, even if the underlying contamination may have occurred years before the petition was filed.  Id. at 153.

So too here.  Plaintiffs contend the Corporation is liable under GMVA's so-called abettor provision, a 2022 amendment permitting claims against a party who "directs, enables, participates in, or conspires in the commission of a crime of violence motivated by gender." S.S. v. Rockefeller Univ. Hosp., 239 A.D.3d 424, 426 (N.Y. App. Div. 2025) (citing N.Y.C. Admin. Code § 10-1104). Yet Plaintiffs allege that Epstein abused them between 2000 and 2016 – years before the 2022 amendment, which has no retroactive application, so they had no existing cause of action even then.  Id.; see also Roldan v. Lewis, 2025 WL 676090, *12 (E.D.N.Y. Mar. 3, 2025) ("Critically, though, at the time of the Amended GMVA's enactment, Plaintiff's claim . . . did not, and never had, existed.").  Their claims "simply did not exist" until January 29, 2026, when N.Y.C. Admin. Code § 10-1104.1 was enacted to authorize GMVA claims based on conduct occurring before January 9, 2022.  In re Duplan, 212 F.3d at 153.

Plaintiffs' reliance on the CERCLA decision in New York v. Longboat, Inc., 140 F.Supp.2d 174 (N.D.N.Y. 2001), does not compel a different conclusion.  For one, the Second Circuit has overruled Longboat's reasoning on dissolution.  See Next Millennium Realty, 2016 WL 1178957 at *8 ("Both *Longboat* and *Occidental Chemical* are predicated on the notion that CERCLA preempted state limits on the capacity of dissolved corporations to be sued, which was overruled by the Second Circuit in *Marsh v. Rosenbloom*.") (citing Marsh v. Rosenbloom, 499 F.3d 165 (2d

17

Cir. 2007)).  For another, <u>Longboat</u> involved conduct that occurred after the enactment of CERCLA, not before it.[11]  So its not factually on point either.

Plaintiffs' GMVA claims are not grounded in "any right or claim existing or any liability incurred before [the] dissolution."  BCL § 1006(b).  For this additional, independent reason, they have no possibility of stating a claim against the Corporation.  <u>Pampillonia</u>, 138 F.3d at 462.

> **4.    Plaintiffs Admitted To the Court That their GMVA Claim Against The Corporation Is Based On Vicarious Liability And/Or Respondeat Superior, Despite Well-Settled Case Law Precluding Employer Liability For An Employee's Sexual Assault.**

Finally, Plaintiffs have no possible claim against the Corporation because they cannot hold it liable under a theory of respondeat superior and/or vicarious liability for Epstein's sexual misconduct.  <u>See</u> <u>Swarna v. Al-Awadi</u>, 622 F.3d 123, 144–45 (2d Cir. 2010) ("New York courts consistently have held that sexual misconduct and related tortious behavior arise from personal motives and do not further an employer's business, even when committed within the employment context.") (collecting New York cases); <u>accord</u>: <u>Boatman v. Cnty. of Onondaga</u>, 229 A.D.3d 1214, 1215 (N.Y. App. Div. 2024) (probation officer did not act within scope of employment while sexually abusing plaintiff).

---

[11]    In <u>Longboat</u>, the plaintiffs sued the defendant "for its actions beginning in 1985," and the defendant dissolved in 1989. 140 F. Supp.2d at 176-77.  But, again, CERCLA was enacted in 1980.  Unlike in this case, a cause of action for a CERCLA violation based on conduct starting in 1985 did, in fact, exist in 1985, before the defendant's 1989 dissolution. <u>Cf.</u> <u>In re Duplan</u>, 212 F.3d at 151-53.  Necessarily then, the <u>Longboat</u> plaintiffs asserted claims based on pre-dissolution conduct and causes of action that existed at the time of that conduct.  Plaintiffs here do not.

18

In moving to remand, Plaintiffs now argue that they assert a direct GMVA claim against the Corporation.  Again, however, ***Plaintiffs' Counsel admitted to the Court at the teleconference hearing on April 29, 2026, that their claims against the entity Defendants are premised on vicarious liability***.  Plaintiffs, in fact, expressly allege that "[a]t all times mentioned herein, Epstein acted within the scope of his employment by Defendants NINE EAST 71ST STREET CORPORATION and/or THE WEXNER FOUNDATION when he committed acts of gender-motivated violence against Plaintiffs."  [Compl., ECF#1-1 at 18, 29, 31.]  They would have no reason to do so unless they sought to hold the Corporation vicariously liable.

New York courts have rejected attempts to use the GMVA as a means to evade the well settled rule that employers are "not responsible for a sexual assault committed by an employee" "as a matter of law." Girden v. Sandals Int'l, 262 F.3d 195, 205–06 (2d Cir. 2001); see Doe v. Sweet Green Inc. et al., Index No. 504820/2024, slip op. at 6 (Sup. Ct. Kings Cnty, (Mar. 3, 2026) (Montelione, J.,) (granting defendant's motion to dismiss GMVA claim because "New York courts have consistently held that sexual assault and rape are outside the scope of employment and as a result employers cannot be held vicariously liable").[12]  This Court should too.

---

[12]      [Notice of Removal, Exh. N, Sweet Green Opinion, ECF#1-14 at 6.]

19

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court deny Plaintiffs' Motion to Remand.

Dated:  May 21, 2026                          Respectfully submitted,


/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (Ohio Bar # 0042679)
Zeiger, Tigges & Little LLP
8000 Walton Parkway, Suite 260
New Albany, OH  43054
Phone (614) 365-9900
Fax (614) 365-7900
Email little@litohio.com

Andrew J. Weinstein
THE WEINSTEIN LAW FIRM PLLC
800 Third Avenue, 20th Floor
New York, NY 10022
(212) 582-8900
(FAX) (212) 582-8989
aweinstein@twlf.com

*Counsel for Defendants*
*Leslie Herbert Wexner and The Wexner*
*Foundation*

20

## CERTIFICATION OF COMPLIANCE

Counsel for Leslie Herbert Wexner and The Wexner Foundation hereby certifies that the foregoing memorandum complies with the word count limit stated in the Court's Individual Practices (dated Mar. 17, 2025), R. III.D. The total number of words in this memorandum, exclusive of the caption, table of contents, table of authorities, and signature block is 5,967.

Dated: May 21, 2026

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (Ohio Bar # 0042679)

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on May 21,2026, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, and that the foregoing was served upon all counsel of record using the CM/ECF system.

/s/ Marion H. Little, Jr.
Marion H. Little, Jr. (Ohio Bar # 0042679)

1085596

22